UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| COLLEEN M. MICHAUD, | ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) | 1:11-cv-00004-GZS |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) ) ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION

The Social Security Administration found that Colleen Michaud, a 28-year-old woman with obesity and a collection of mental health diagnoses, has severe impairments but retains the functional capacity to perform substantial gainful activity in occupations existing in significant numbers in the national economy, resulting in a denial of Michaud's application for supplemental security income benefits under Title XVI of the Social Security Act. Michaud commenced this civil action to obtain judicial review of the final administrative decision. I recommend that the Court affirm the administrative decision.

### The Administrative Findings

The Commissioner's final decision is the November 9, 2010, decision of Administrative Law Judge Joseph Shortill because the Decision Review Board did not complete its review during the time allowed. Judge Shortill's decision tracks the familiar, five-step sequential evaluation process for analyzing social security disability claims. (Docs. Related to Admin. Process, Doc. No. 8-2, R. 1, 7-16.[1])

At step 1 of the sequential evaluation process, the Judge found that Michaud has not

---

[1] The Commissioner has consecutively paginated the entire administrative record ("R."), which has been filed on the Court's electronic docket in a series of attachments to docket entry 8.

engaged in substantial gainful activity since January 18, 2008, the date of application for Title XVI benefits. (R. 9, Finding 1.) At step 2, the Judge found that Michaud has the following severe physical/mental impairments: obesity, low-average intelligence with a fourth grade reading level, post-traumatic stress disorder, a depressive disorder, a personality disorder, and polysubstance abuse/dependence. (R. 10, Finding 2.) At step 3, the Judge found that this combination of impairments would not meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P, and he assessed, among other things, mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties with concentration, persistence, and pace, and no episodes involving decompensation of an extended duration. (Id., Finding 3.)

Preliminary to further evaluation at steps 4 and 5, the Judge assessed Michaud's residual functional capacity. The Judge found that the combined impairments result in a restriction to light work, an inability to climb ropes, ladders, and scaffolds, an ability to occasionally kneel and crouch, a need to avoid uneven or rough walking surfaces, a limitation to unskilled and uncomplicated work with only occasional changes in work setting and interaction with the general public, and occasional-to-frequent interaction with supervisors and coworkers. (R. 11, Finding 4.) In arriving at this finding, the Judge placed great weight on the assessments offered by Edward Quinn, Ph.D. (Ex. 10F, Doc. No. 8-8) and testifying medical expert James Claiborne (Tr. of June 7, 2010, Hr'g at 109-117, Doc. No. 8-2.) He also purported to place moderate weight on a March 2009 psychological evaluation performed by Diane Tennies, Ph.D., in connection with a diagnostic referral from Maine District Court for a parental-capacity evaluation, including a "child maltreatment risk evaluation" (Ex. 18F, Doc. No. 8-9).[2]

---

[2] Maine District Court maintains an initiative titled Child Abuse and Neglect Evaluation Program (CANEP). Dr. Tennies's evaluation arose pursuant to the CANEP program.

At step 4, there was no past relevant work for the Judge to compare to the residual functional capacity finding. (R. 14, Finding 5.) Michaud qualifies as a younger individual, has a high school education, can communicate in English, and has no past relevant work or transferrable skill. (Id., Findings 6-8.) The Judge presented a vocational expert with this vocational profile and the residual functional capacity findings and found, based on the vocational expert's hearing testimony, that Michaud could still engage in other substantial gainful employment, based on the expert's testimony that Michaud would be able to perform representative occupations such as a cleaner/housekeeper; final assembler; bottling line attendant; and produce weigher. (Finding 9, R. 15.)

**Discussion of Plaintiff's Statement of Errors**

The focus of Michaud's challenge involves her contention that the Judge erred in relation to the residual functional capacity finding by failing to place greater emphasis on the negative assessments of Michaud's capacity for appropriate behavior offered by Dr. Tennies. (Statement of Errors at 2-10, Doc. No. 10.) Michaud further argues that the judge failed to adequately explain how he assessed a capacity for public interaction or how he assessed the impact of obesity in relation to stooping and crouching. (Id. at 10-11.)

The standard of review is whether substantial evidence supports the Commissioner's findings. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted

to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

### A. *Medical Expert Assessments*

Dr. Tennies's psychological evaluation of Michaud transpired in early 2009 and took place in the context of a Maine District Court child-jeopardy hearing arising from the fact that Michaud abandoned her infant son at the doors of the Aroostook Medical Center in November 2007, when Michaud was 23 years old. (Ex. 18F, R. 637.) Michaud left a note with her son stating that she had not wanted to have sex with the child's father and was too young to have a baby and could not care for the child. (Id.) Michaud explained to Dr. Tennies that her domestic partner at the time was physically abusive and would hit her while she held the baby. Michaud reported that she left the baby at the hospital with a note to contact Michaud's mother for fear she would otherwise be found by her partner with the baby in her possession. (R. 638.) She told Dr. Tennies in 2009 that she could be a good parent if she could have a place of her own to live with the then two-year-old child. (Id.) The report also relates Michaud's involvement in a felony auto theft from a Mars Hill dealership in 2009. (R. 637.) Michaud's personal childhood history was rough and included sexual assaults. (R. 639.) There is a history of ADHD and social difficulties in childhood. (Id.) Intelligence testing resulted in a composite score of 78. (R. 640.) Primarily emphasized by Michaud is her performance on the Minnesota Multiphasic Personality Inventory-II. Dr. Tennies reported that Michaud's profile was one "frequently found among hospitalized psychiatric patients." (R. 641.) Typical symptoms for someone with this profile include trouble with impulse control, intense outbursts of anger, paranoia, disinclination to accept responsibility, disruptive interpersonal relationships, occasional confusion and disorientation, self-absorption, and lack of empathy and introspection. (Id.) Dr. Tennies anticipated that treatment for this inventory of personality traits would take between two and five

years. (R. 646.)

In April 2008 Jonathan Freedman, Ph.D., offered a medical source statement based on a psychological evaluation conducted on referral from Maine Disability Determination Services. (Ex. 4F, R. 465.) Edward Quinn, Ph.D., offered another, similar source statement in September 2008. (Ex. 10F, R. 510.) Based in part on these evaluations, additional consulting experts performed the Commissioner's psychiatric review technique and offered assessments indicating that Michaud has work capacity. (Exs. 5F, 6F, 11F, 12F.) Specifically, Lewis Lester, Ph.D. assessed that Michaud can understand and remember *simple, repetitive tasks and procedures,* can be reliable and sustain two-hour blocks at simple tasks at a consistent pace over a normal work day/week, cannot interact with the public, but can interact with co-workers and supervisors in a normal work setting, and can adapt to occasional and routine changes. (Ex. 6F, R. 482.) David Houston, Ph.D., somewhat similarly, assessed that Michaud can understand and remember simple instructions, is able to carry out simple tasks, is able to interact with co-workers and supervisors, and is able to adapt to simple changes. (Ex. 12F, R. 529.) Michaud says these assessments of work-specific functioning are undermined by Dr. Tennies's more recent evaluation of Michaud in relation to parenting.

The administrative law judge called a medical expert to testify at Michaud's June 7, 2010, hearing.[3] Dr. James Claiborne testified that Michaud's impairments were not at the listing level, and that her restrictions were at the moderate level in relation to social functioning and in relation to concentration, persistence, and pace, with only mild difficulties in activities of daily living. (Hr'g Tr. at 38-39, R. 113-114, Doc. No. 8-2.) Michaud's counsel specifically asked whether Dr. Claiborne took into consideration the report of Dr. Tennies. Dr. Claiborne

---

[3] This hearing is not the only hearing of record. The Judge also conducted a hearing in September 2009, without the benefit of expert testimony, and the Decision Review Board remanded the resulting decision with an instruction to address the Tennies report.

responded that he had and that he gave it careful consideration. (R. 114-15.) Dr. Claiborne agreed with counsel that the Tennies report drew from a wealth of sources. (Id.) Counsel asked no more probing questions. Thereafter, the judge elicited testimony from Dr. Claiborne to the effect that the Tennies report was focused on Michaud's ability to parent rather than on her ability to pursue gainful activity. (Id.) In response to this, counsel elicited further testimony to the effect that the report gave good indication that there is a significant problem in Michaud's judgment and understanding in relation to the needs of a child. (Id. at 116.)

## B. Discussion

Michaud contends that the administrative law judge's treatment of the Tennies report was perfunctory and should have placed greater weight on the doctor's findings because the report was based on a long evaluation period, relied on multiple evidentiary sources, and was presumptively more probing given the importance of the child-protective proceeding in which the report was offered. (Statement of Errors at 2-6.) Michaud says additional evidence of her disability is found in evaluative reports issued during her own childhood, which depict circumstances associated with her foster care from age 16 to 18, threats Michaud made against her mother, a notation of "rule out" for oppositional-defiance disorder, narcissism and insensitivity, and what Michaud characterizes as "deeply ingrained, maladaptive patterns of behavior." (Id. at 5, citing *Bulucu, M.D., Apr. 2001, Psych. Eval.*, Ex. 21F; *Glick, Ph.D., Nov. 2000 Psych. Eval.*, Ex. 20F.) In Michaud's view, Dr. Tennies should be regarded as a treating source for purposes of assigning weight and the administrative law judge's reasons for rejecting the Tennies report do not rise to the level of "good reasons." (Id. at 7-8, citing 20 C.F.R. § 416.902 and quoting 20 C.F.R. § 416.927(d)(2).) Lastly, Michaud argues that the psychiatric evaluations offered by two Disability Determination Services consulting physicians are not

6

reliable because neither evaluator had the benefit of the Tennies evaluation and each evaluator had only a single interview with Michaud. (Id. at 9, referring to Exs. 4F and 10F.)

Based on my review of the record, I conclude that the primary allegation of error regarding the Tennies evaluation does not carry the day. Notably, the report focused on a different concern (parenting) and it is not accompanied or reinforced by any medical source statement of ability to perform work functions. Dr. Tennies was not a treating source, contrary to Michaud's argument, and Dr. Tennies's report was not simply disregarded by the Judge. The Judge acknowledged severe occupational limitations, in part based on the Tennies report, and gave the report moderate weight. There is no error in this treatment. As for the childhood evaluations from 2000 and 2001, those materials are not inconsistent with a finding of work capacity, though they do reflect that certain maladaptive behaviors and traits have existed since childhood. As for the consultative psychiatric examinations performed for Maine Disability Determination Services, Michaud is incorrect that these reports have nothing to offer merely because they were produced in advance of Dr. Tennies's evaluation. The consultative examination reports offered by Dr. Freedman (Ex. 4F) and Dr. Quinn (Ex. 10F) were provided by consultants versed in the social security disability standards and are, consequently, calibrated to the occupational concerns raised by Michaud's claim for benefits. These examination reports, the related mental residual functional capacity assessments offered by Dr. Lester (Ex. 6F) and Dr. Houston (Ex. 12F), and the testimony of Dr. Claiborne all supplied substantial evidentiary material for the Judge to weigh in the process of evaluating expert opinion pursuant to 20 C.F.R. § 416.927.

Michaud also contends that the Judge erred in failing to explain his rejection of Dr. Lester's assessment that Michaud cannot handled the demands of public interaction. (Statement

of Errors at 10.) Lewis Lester, Ph.D., provided the Commissioner with both a psychiatric review technique form and a mental residual functional capacity assessment in May 2008. (Exs. 5F, 6F.) In the latter, Dr. Lester opined that Michaud would be markedly limited in the ability to interact with the general public. (R. 481.) In his narrative findings, he explained that Michaud would not be able to interact with the public due to her attention deficit, personality disorder, anxiety, and depression, but would be able to interact with co-workers and supervisors in a normal work setting. (R. 482.) Somewhat similar are the psychiatric review technique form and mental residual functional capacity assessment offered by David Houston, Ph.D., in October 2008. (Exs. 11F, 12F.) Dr. Houston opined that Michaud would suffer moderate limitation as far as the general public is concerned, but stated in his narrative findings only that Michaud "is able to interact with co-workers and supervisors." He noted, additionally, that she "plays pool and goes to church," activities involving public encounters. (R. 528-29.) In his decision, the Judge found credible a function report offered by Michaud's roommate, who reported that Michaud grocery shops and engaged in church and other social outings. (R. 13; Ex. 3E, Doc. No. 8-6.) However, despite a thorough review of the record, the Judge did not offer any focused discussion about Michaud's ability to engage with the public. Although this is not ideal, I am not persuaded that this shortcoming rose to the level of reversible error. In his consultative examination report of April 2008, Dr. Freedman opined that Michaud's social ability is "adequate." (Ex. 4F, R. 465.) The Judge noted this finding in his decision. (R. 13.) Similarly, Dr. Quinn opined that, despite challenges, Michaud "appears capable of relating to others appropriately in a social setting." (Ex. 10F, R. 510.) These source statements, in my view, provide substantial evidentiary support for the Judge's decision to find moderate difficulties with social interaction that would not preclude occasional public interaction. Finally, as noted by the

Commissioner at oral argument, the jobs identified by the vocational expert at the hearing, which the Judge found Michaud could successfully transition to, do not impose appreciable demands related to public interaction. These occupations were cleaner/housekeeper, final assembler, bottling line attendant, and produce weigher. These jobs were identified by the vocational expert in response to a hypothetical involving a residual functional capacity for only occasional public interaction. It is in no way apparent that they would be ruled out by a prohibition on public interaction.

Michaud's final complaint about the residual functional capacity finding is that it does not adequately address her obesity. Michaud contends that she cannot kneel, crouch, or stoop due to body habitus. She asserts that the Judge accepted her representation at hearing that she cannot kneel without falling over and that, having done so, he was not at liberty to conclude that she could kneel occasionally rather than not at all. (Statement of Errors at 11; Tr. at 44-45, R. 119-20.) The Judge's residual functional capacity assessment states that Michaud "may occasionally kneel and crouch." (R. 11.) In his discussion, the Judge alludes once more to a function report offered by Michaud's roommate, who indicated that Michaud might kneel for five minutes. (R. 13, 315.) Apart from this evidence, there is a physical residual functional capacity assessment in the record from J.H. Hall, M.D. (Ex. 9F), who opined that, with the exception of climbing ladders, ropes, and scaffolds, Michaud's postural limitations from obesity would fall into the occasional category. (R. 502.) The Judge did not offer a discussion focused on obesity, but this does not mandate reversal. The record contains substantial evidence in support of a restriction falling in the "occasional" category. In addition to Michaud's testimony and the friend's function report, there are Michaud's activities of daily living, which include daily fishing trips during the fishing season. (Tr. at 31, R. 106.) An outright prohibition on

9

kneeling and crouching is not required by the record. Moreover, Michaud has not pointed to any treatment records identifying difficulties along these lines such as an inability to assume any particular posture. Based on an independent review of the record, a reasonable person could well be satisfied that the Judge's utilization of the record adequately supports his residual functional capacity finding.

## Conclusion

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court affirm the Commissioner's final decision and enter judgment in favor of the Commissioner.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

December 21, 2011